# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BENNE SINGLETARY                    )
                                    )
    Plaintiff,              )
                                    )
    v.                      )          C.A. No. 06-315-JJF
                                    )
COL. WILLIAM GOSNELL and            )
C/O MICHAEL WAPLES                  )
                                    )
    Defendants.             )

## DEFENDANTS' ANSWERING BRIEF
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

    1.    Plaintiff Benne Singletary ("Singletary")  is an inmate incarcerated and under the supervision of the Delaware Department of Correction ("DOC") at the Delaware Correctional Center ("DCC")  Smyrna, Delaware.  During the relevant period of the actions giving rise to this Complaint Singletary was incarcerated at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware.

    2.    On or about May 12, 2006,  Singletary filed a Complaint with leave to proceed *in forma pauperis* pursuant to 42 U.S.C.§1983, alleging Eighth and Fourteenth Amendment Due Process violations against DOC defendants Warden Rick Kearney, and Correctional Officers; Kevin Bates, William Gosnell and Michael Waples. (D.I.#2). Specifically, Singletary alleges the Defendants failed to protect him from another inmate, Antonio Drummond, ("Drummond") who they "knew had a violent nature," and who subsequently attacked Singletary. *Id.*  On or about July 13, 2006, Defendants Kearney and Bates were dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B) and 1915A(b)(1). (D.I.8). On or about September 20, 2006, the remaining Defendants,

Gosnell and Waples ("Defendants") filed an Answer. (D.I. 14). On or about February 16, 2007, Singletary was deposed. Singletary has filed three Motions for Appointment of Counsel, (D.I. 3, 27 & 31) all of which have been denied. Singletary filed an Opening Brief in Support of his Motion for Summary Judgment on or about June 27, 2007. (D.I. 41). On or about July 9, 2007, Defendants filed a Motion for Enlargement of Time requesting an enlargement of thirty days in which to file an Answering Brief. (D.I. 42). On or about July 17, 2007, Defendants' motion was granted. (D.I. 43). This is Defendants' Answering Brief in Support of their Motion for Summary Judgment.

3.      Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When considering a Motion for Summary Judgment, the court must view the evidence in the light most favorable to the nonmoving party. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any..." which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323-25 (1986). Once the movant satisfies this burden, the non-moving party must demonstrate to the court that sufficient evidence exists from which a jury might return a verdict in its favor. *Id.* The mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be

enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). For the reasons stated herein, Defendants are entitled to judgment as a matter of law as Defendants have submitted sufficient documentation to enable a jury to reasonably find for them. *Id.*

**Singletary's Failure to Exhaust Administrative Remedies**

4.     An inmate must first exhaust the administrative remedies available to him prior to filing a §1983 action pursuant to the Prison Litigation Reform Act of 1996, ("PLRA") 42 U.S.C. §1997e(a), regardless of whether the relief he desires can be granted by the administrative process. *Nyhuis v. Reno*, 204 F. 3d 65, 67 (3d Cir. 2000) *See also Booth v. Churner*, 206 F. 3d 289, 295 (3d Cir. 2000). Congress amended 42 U.S.C. §1997e(a) in response to the heavy volume of frivolous prison litigation filed by inmates who often file claims that are untidy, repetitious and regurgitate legal language. *Nyhuis* at 73-74. These claims require the courts to expend significant judicial resources to review these claims. *Id.* It is with these considerations, along with the plain meaning of 42 U.S.C. §1997e(a), that the Court must dismiss an action filed by or on behalf of a prisoner who has failed to exhaust all available administrative remedies prior to filing a lawsuit. *Id.* at 78. The Third Circuit unequivocally ruled that the exhaustion of administrative remedies requirement of the PLRA applied to any and all claims brought by an inmate pursuant to 42 U.S.C. §1983, regardless of the relief sought. *Id.* at 70.

5.     Singletary's Complaint is clearly subject to §1997e(a) exhaustion of remedies requirement. *Porter v. Nussle*, 534 U.S. 516 (2002). Section 1997e(a) is applicable to all inmate claims except those challenging the fact of duration of confinement. Singletary admits that he was aware of the SCI grievance procedure but

nevertheless failed to file one concerning the assault which is the basis of this Complaint.[1]  (Exh. "A" Depo. Pg. 58, 16-24; pg. 59, 1-4).  Singletary alleges that since he verbally communicated his complaint to the grievance officer, he complied with the grievance procedure.  There is no evidence to substantiate Singletary's claim that he ever spoke with the grievance officer whom he identifies as "lieutenant dude." Furthermore, verbal communication of a grievance to an officer does not fit the requirements of the SCI grievance policy; nor does it guarantee a satisfactory resolution.  The grievance officer, in any event would have told Singletary to file a grievance. Singletary's reason for not following through with filing a grievance was because "the grievance system doesn't provide for damages." (D.I. 2). As previously mentioned,  the administrative remedies requirement of the PLRA applies to any and all claims brought by an inmate pursuant to 42 U.S.C. §1983, regardless of the relief sought. *Nyhuis,* 204 F. 3d at 70. (3d Cir. 2000). Furthermore, a review of the few grievances filed by Singletary during his incarceration at SCI, none relate to his claim of failure to protect,  or for that matter being threatened by Drummond or anyone else.  (Affidavit of Earl Messick attached hereto at Exh. "B" ¶5 ).

Based on Singletary's non-compliance with the grievance procedure of which he admits he was fully aware,  Singletary has failed to exhaust his administrative remedies,

---

[1]      Q. (State Defendants' Attorney) – So you were familiar that there was a grievance procedure at SCI?
          A. (Singletary) – I knew there was a grievance procedure, but—
          Q. And that you could submit forms of your grievance?
          A. Yes. I felt as though I can speak to him (grievance officer) verbally, so I considered that as following the procedures.
          Q. So your verbal communication you thought was sufficient—
          A. Yes.
          Q. –as far as a grievance?
          A. Yes.

and therefore, his Motion for Summary Judgment must be dismissed pursuant to 42 U.S.C. §1997e(c)(2).

**Singletary's Eighth Amendment Failure to Protect Claim**

6.      The Eighth Amendment imposes "a duty on prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Jones v. Beard,* 145 Fed. Appx. 743 (3d Cir. 2005). (citing, *Hamilton v. Leavy,* 117 F. 3d 742, 746 (3d Cir. 1997). In order to establish a failure to protect claim, an inmate must demonstrate that: (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element)." *Id.* at 745. (citing *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994)). To be deliberately indifferent, a prison official must both know and disregard an excessive risk to inmate health or safety. *Id.* at 837. This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 131 (3d Cir.2001).

Singletary alleges in his Complaint and Summary Judgment motion that he was "exposed to a substantial risk of serious harm. Specifically, the Defendants failed to protect him from another inmate who thereafter cut Singletary across chest, back and forearm." (D.I. 41, ¶3). Singletary, further alleges that the Defendants were aware of Drummond's history of institutional violence as well as the assault between Drummond and Singletary the day before; therefore, they knew or should have known that Singletary

was at substantial risk of being harmed. *Id.* Singletary cannot support a failure to protect claim for several reasons.

First, Singletary was not incarcerated under conditions that posed a substantial risk of serious harm. Rather Singletary, by his own actions on January 14, 2006, the day before the assault of which he complains created a risk of harm by assaulting Drummond. (Exh. B,¶3). Specifically, Singletary alleges that Drummond threatened him on January 13, 2006, when Drummond allegedly told him that he was going "to put his hands on him." Singletary admits however that he did not tell DOC personnel of Drummond's alleged threats, in fact, he only told one other inmate.[2] (Exh. "C" Depo. Pg. 32, 7-23). On January 14, 2006, Singletary and two of his friends assaulted Drummond. (Exh. B, ¶3). The next day, January 15, 2006, Singletary anticipated a revenge match with Drummond, "I assumed that Drummond probably wanted to fight again." (Exh. "D" Depo. Pg. 44, 18-24). Some of the other inmates expected a fight too as they chose did not to go the gym on January 15, 2006, for fear of getting caught up in it. (Exh. B, ¶4). Singletary however, had prepared himself for such an event. The inevitable occurred when Drummond using a homemade shank assaulted Singletary who later required medical treatment for his injuries. Thus, it was Singletary's actions that caused the risk of harm.

Second, the Defendants did not know of and disregard an excessive risk to Singletary's safety. Neither Defendant was aware of the Singletary/Drummond relationship or any problems thereof; therefore, they had no way of knowing what had

---

[2]    (State Defendants' Attorney) Q. Let me back up. Did you tell anyone else?
    A. No, ma'am. I didn't tell anybody else.
    Q. At that point what did you think that Drummond was going to do or try to do?
    A. I knew I had to fight Drummond.
    Q. You what?
    A. I knew I had to fight Drummond or he was going to keep coming at me.

transpired between them earlier or ever.  (See Affidavits of Waples and Gosnell attached hereto at  Exhibits "E " ¶6 and F" ¶6 respectively). Nor did Singletary ever tell either officer that he felt threatened by Drummond. *Id.*  In fact, the record is devoid of evidence establishing that Singletary articulated specific threats of serious harm, or that he made any complaints about Drummond to DOC personnel. (Exh. B, ¶5).  Threats between inmates are common and do not, in every circumstance "serve to impute actual knowledge of a substantial risk of harm." *Jones,* 145 Fed. Appx. at 745. (citing, *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir.1998).  Although Singletary cites to Drummond's alleged violent behavior, a review of Drummond's Incident Reports from January, 2004 through January, 2006, found no incidents of violent behavior. ( Exh. B, ¶5). Moreover, when questioned about the circumstances of his injuries, Singletary told Waples that "a weight had dropped on him," (Exh. E, ¶4), while Gosnell was told that Singletary "fell against the gate." (Exh.F, ¶3).  Neither Defendant believed these responses as Singletary's injuries were consistent with being cut by a sharp object.  Singletary wasn't truthful about the circumstances of his injuries nor would he say who assaulted him for fear of being called a "snitch."  (D.I. 41, ¶12).

Singletary was unwilling to provide DOC personnel any information about the earlier assault on Drummond, and then made untruthful statements about Drummond's assault on him; therefore, Defendants could not have had actual knowledge of the animosity between the two inmates. The results of Earl Messick's investigation confirmed that Singletary's assault on Drummond on January 14, 2006, was the direct cause of Drummond's assault on Singletary on January 15, 2006. (Exh. B, ¶5).  The facts of this case clearly reveal that Defendants did not fail to protect Singletary since they had

no actual knowledge that Singletary faced an unreasonable or excessive risk. *Beers-Capitol,* at 256 F.3d at 131. Summary judgment therefore, in the Defendants' favor as to this claim is appropriate.

### No Personal Involvement on Defendants' Part

7.      Singletary's Motion for Summary Judgment fails to prove any personal involvement by the named Defendants. In actions brought pursuant to 42 U.S.C. § 1983, an individual cannot be held liable in the absence of personal involvement or knowing acquiescence of the alleged deprivation. *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981) *cert. denied,* 458 U.S. 1121 (1982). "[T]he officials' misconduct cannot be merely a failure to act. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Id.* Without identifying how they participated in, personally directed, or acquiesced in the events which he claims deprived him of constitutional rights, these Defendants can not be held liable and dismissal is appropriate. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### Defendants Are Immune From Liability For Singletary's Claims.

8.      Singletary seeks to hold the Defendants liable in their official, as well as their individual capacities. These Defendants however, are immune from such claims. To the extent that Singletary seeks to hold Defendants liable in their official capacities for the alleged torts and/or constitutional violations, the Doctrine of Sovereign Immunity bars such claims. *See* Del. Const. Art. I., Sec 9; *Doe v. Cates*, 499 A.2d 1175 (Del. 1985). The Defendants in this case clearly acted without gross or wanton negligence.

Moreover their actions arose out of, and in connection with the performance of official discretionary duties. 10 *Del. C.* § 4001.  Thus Defendants are immune from Singletary's tort and constitutional claims.

Further, to the extent Singletary's Complaint names the Defendants in their official capacities, they are immune from liability under the Eleventh Amendment.  The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts jurisdiction under Article III."  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).  The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress's intent to waive the state's immunity will produce this result.  *Id.*  No such clear intent can be found in 42 U.S.C. § 1983.  In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons.  42 U.S.C. § 1983.

A suit against state officials in their official capacities is treated as a suit against the State.  *Hafer v. Melo*, 502 U.S. 21 (1991).  Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 U.S.C. § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Consequently, this Court lacks jurisdiction over the Defendants in their official capacities, and the Defendants are outside the class of persons subject to liability under 42 U.S.C. § 1983.  Therefore summary judgment is appropriate.

### Defendants Waples and Gosnell are immune from liability in their individual capacities pursuant to the doctrine of qualified immunity.

9.       Singletary also cannot maintain an action against the Defendants in their individual capacities pursuant to the doctrine of qualified immunity.  Government

officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, the defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

In the case at bar, actions taken by Defendants were reasonable in light of their knowledge at the time. When Waples saw that Singletary was bleeding he immediately sent him to medical for treatment. (Exh. E, ¶4). In the infirmary, Gosnell attempted to get information from Singletary concerning the circumstances of the assault but he refused to provide any. (Exh. F, ¶3). Although the Defendants were acting after the fact, documents submitted with Defendants' response substantiate their claims that they had no prior knowledge of the Singletary/Drummond relationship. Given that Defendants are immune from liability in their official and individual capacities, Singletary cannot maintain this action and Motion for Summary Judgment should be granted to the Defendants.

Wherefore, for the reasons stated herein, the Defendants respectfully request this

Honorable Court to deny Plaintiff's Motion for Summary Judgment.


**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

  _/s/ Ophelia M. Waters_
Ophelia M. Waters, ID#3879
Deputy Attorney General
Carvel State Bldg., 6th Fl.,
820 North French Street,
Wilmington, Delaware 19801
(302) 577-8400
Counsel for Defendants


Dated: August 7, 2007

### CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2007 I electronically filed *Defendants'*

*Answering Brief in Response to Plaintiff's Motion for Summary Judgment* with the

Clerk of Court using CM/ECF.  I hereby certify that on August 7, 2007,  I have mailed by

United States Postal Service, the document to the following non-registered participant:

Benne Singletary, SBI #332365; Delaware Correctional Center; 1181 Paddock Road;

Smyrna, DE 19977.


/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. # 3879
Deputy Attorney General
Department of Justice
State of Delaware
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400

# EXHIBIT A

58

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16      Q.    So you were familiar that there was a grievance

17   procedure at SCI?

18      A.    I knew there was a grievance procedure, but --

19      Q.    And that you could submit forms of your

20   grievance?

21      A.    Yes.   I felt as though I can speak to him

22   verbally.   I spoke to him verbally, so I considered that

23   as following the procedures.

24      Q.    So your verbal communication you thought was

59

```
1   sufficient --

2        A.   Yes.

3        Q.   -- as far as a grievance?

4        A.   Yes.
```

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENNE SINGLETARY                 )
                                 )
          Plaintiff,             )
                                 )
     v.                          )        C.A. No. 06-315-JJF
                                 )
COL. WILLIAM GOSNELL and         )
C/O MICHAEL WAPLES               )
                                 )
          Defendants.            )

## AFFIDAVIT OF EARL MESSICK

I, Earl Messick having been duly sworn by law, do hereby depose and state as follows:

1.     I am employed by the State of Delaware, Department of Correction, at the Sussex Correctional Institution, (ASCI@) Georgetown, Delaware as Staff Lieutenant. I am the institutional investigator at this facility. I have held this position at all times relevant to the instant case.

2.     I make this affidavit based on my personal knowledge.

3.     On January 15, 2006, I commenced an investigation regarding an incident that occurred earlier that day in the gym area between inmates Benne Singletary ("Singletary") and Antonio Drummond. ("Drummond"). I learned almost immediately that the incident in question was provoked by an altercation that occurred between these same two inmates the day before. Testimony from inmate witnesses claimed that on January 14, 2006, Singletary, and two other inmates, James Broadnax and Dwayne Warren jumped Drummond in the gym and beat him up. These inmates agreed to give

statements only as confidential informants; they stated they would not testify in court. Three of the inmates interviewed had provided useful information in prior investigations that proved to be credible. Singletary, Broadnax and Warren were subsequently referred to the inmate disciplinary board for violation of assault.

4.      Singletary originally told staff that the cuts on his body were the result from injuries in a basketball game; however, it was evident his injuries were caused by a sharp instrument. After being treated by medical staff, Singletary spoke with Lt. Truman Mears and told him that Drummond charged into him while he was playing basketball and assaulted him. Singletary then admitted that there had been an altercation between him and Drummond the day before, and that he had expected Drummond to retaliate; although, not with a shank. While investigating another incident on January 31, 2006, I learned that some inmates had not gone to the gym on January 15, 2006, because they were sure that Drummond was going to retaliate against Singletary and they did not want to get caught up in it. Singletary later told me that he did not intend to tell who cut him and indicated that he did not wish to pursue or participate in my investigation. He further stated that he would not be willing to give testimony for use in court.

5.      The staff had no way of knowing that Drummond was preparing to attack Singletary. If Singletary had gone to staff and told them that he had had an altercation with Drummond and that he expected Drummond to exact revenge, preventive measures would have been taken by the staff to avoid another assault. A review of Drummond's Incident Reports from January, 2004, through January, 2006, found no reports of violent behavior. It appears that Drummond's one violent episode was directly caused by Singletary's assault. Among the few grievances filed by Singletary none of them relate

to being threatened by any one or having trouble with other inmates. The results of the investigation confirmed that the assault which took place on January 14, 2006, was the direct cause of the assault that occurred on January 15, 2006.

_s/ Earl T. Messick_
Earl Messick

SWORN TO AND SUBSCRIBED before me this 6th day of August, 2007.

_Phyllis Redden_
Notary

PHYLLIS REDDEN
Notary Public, State of Delaware
My Commission Expires October 31, 2007

# EXHIBIT C

Benne Singletary

32

7   A.   I got back on the chair.  I told this dude named

8   Buck, I told him, I said --

9   Q.   Is Buck an inmate?

10   A.   Yes.  I said, I don't -- this guy, they try to

11   hop on me in the gym, Drummond and the boy Shy.

12          He was like, yeah, yeah, man.

13          I said, them dudes is crazy.  He think I'm

14   some type of lame on or something.

15          So on the 13th --

16   Q.   Let me back up.  Did you tell anybody else?

17   A.   No, ma'am.  I didn't tell anybody else.

18   Q.   At that point what did you think that Drummond

19   was going to do or try to do?

20   A.   I knew I had to fight Drummond.

21   Q.   You what?

22   A.   I knew I had to fight Drummond or he was going to

23   keep coming at me.

24

**W&F**

**WILCOX & FETZER LTD.**
Registered Professional Reporters

# EXHIBIT D

Renne Singletary

44

18      A.   The 14th was like, I didn't know Drummond was,

19  whatever he was planning, but I assume that he probably

20  wanted to fight again.  I didn't know.  I went to gym.  I

21  did my usual, I walked to the back of the line.  I did

22  gym and somebody came up to me and said, they said

23  Drummond wants to run with you -- shoot the one.

24      Q.   That means he wants to fight you again?

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BENNE SINGLETARY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-315-JJF |
| | ) | |
| COL. WILLIAM GOSNELL and | ) | |
| C/O MICHAEL WAPLES | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF MICHAEL WAPLES

I, Michael Waples having been duly sworn by law, do hereby depose and state as follows:

1. I am employed by the State of Delaware Department of Correction ( "DOC") at the Sussex Correctional Institution (ASCI®) Georgetown, Delaware.  I have been employed by the DOC for 21 years.

2. I make this affidavit based on my personal knowledge.

3. On January 15, 2006, I was in my office on duty in the SCI gym.  The office window provides a clear view of the gym. At the end of the gym there's a door which opens up to a grassy/dirt yard where inmates can lift weights. The yard area is enclosed by a fence and overseen by a guard tower.

4. On this day there were very few people in the gym area. At one point, during the recreation period around 10:00 AM, the plaintiff, Benne Singletary ("Singletary") approached me covering his arm.  I noticed that he was bleeding and asked him what had happened. He replied that a weight had dropped on him. I told him to go straight to medical for treatment.

5.      Later on medical called the gym and inquired how Singletary got cut. I could only tell them what Singletary had told me as I had witnessed no altercation in the gym area. Some officers and I checked the gym to find out where the altercation may have occurred; however, there was no trace of blood anywhere in the gym. The lack of blood in the gym area lead us to believe that the altercation occurred in the yard.

6.      Due to my work schedule, I was not aware of Singletary's assault on inmate Antonio Drummond which occurred the day before, on January 14, 2006.  Lastly, Singletary never asked me to be placed in protective custody or indicated that he was threatened in any way.

_____
Michael Waples

SWORN TO AND SUBSCRIBED before me this  2nd  day of  Aug. , 2007.

_____
Notary

HELEN M. JOHNSON
NOTARY PUBLIC
STATE OF DELAWARE
MY COMMISSION EXP. 6-19-2010

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BENNE SINGLETARY                     )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        C.A. No. 06-315-JJF
                                     )
COL. WILLIAM GOSNELL and             )
C/O MICHAEL WAPLES                   )
                                     )
            Defendants.              )

### AFFIDAVIT OF WILLIAM GOSNELL

I, William Gosnell having been duly sworn by law, do hereby depose and state as

follows:

1.      I am employed by the State of Delaware Department of Correction

( "DOC") at the Sussex Correctional Institution (ASCI@) Georgetown, Delaware.  I have

been employed by the DOC since November, 1995, starting at the Gander Hill facility. I

transferred to SCI in April, 1998. I was promoted to Correctional Corporal in 2001. My

duties include supervising and participating in the maintenance of discipline, order,

security and housekeeping of assigned locations and/or staff. Additional responsibilities

include supervising and participating in periodic shakedowns of buildings, grounds and

cell blocks to detect contraband or defects in the security system.

2.      I make this affidavit based on my personal knowledge.

3.      On January 15, 2006, around 10:00 AM, I was assigned to Guard Post #3

when Sgt. Kevin Bates told me to go to the gym due to a disturbance.   When I arrived,

C/O Michael Waples told me that one of the inmates, Benne Singletary, had gotten cut up

pretty bad.  Pat searches were carried out for contraband on each individual exiting the

gym. Shortly thereafter, I went to the infirmary to check on Singletary's condition. I asked Singletary how he got his injuries and who was involved; he told me that he had fallen. Following his medical treatment, Sgt. Bates and I escorted Singletary to the holding cell. Once there, I again asked Singletary about the circumstances of his injuries to which he replied that he had fallen against the gate. He would not tell me the name of the inmate or inmates that may have been involved in the assault on him. I never stated to Singletary that I knew who attacked him as he alleges. When I was in the infirmary questioning him, I had just found out about the incident; therefore, there was no way that I could have known who had attacked him.

4.     Sgt. Bates and I discussed the situation with Captain Paul Walker, the Watch Commander at the time, who decided to administratively transfer Singletary to ASDA pending the outcome of an investigation. Officer M. Justice and I returned to Singletary's cell to inventory and pack his personal property. While inventorying his property, we found a note written by another inmate describing what had transpired between Singletary and Antonio Drummond ("Drummond") the inmate who assaulted Singletary. I confronted the inmate who wrote the note and he admitted that he had written it. The inmate then stated that he didn't think Drummond was going to cut Singletary, he thought they were just going to go "fist to fist and settle their problems with each other." It was evident from this inmate's responses to my questioning, that he either had prior knowledge of the assault or someone on the tier had told him about it.

5.     Upon learning this information, Drummond was pulled off the tier and transferred to pre-trial, behavior modification. Officer M. Justice and I did a razor check for the tier and found that Drummond did not have one, which led us to believe that

Drummond used his razor in the assault. The shank, a toothbrush with a razor melted into the handle, was later found and turned in as evidence.

6.    My incident report dated January 15, 2006, describes what I observed and heard following the assault on Singletary. Also, when Singletary and his gang assaulted Drummond two or three days before, it was my day off; therefore, I had no knowledge of this earlier assault. I only learned about the earlier assault because of Singletary's assault the next day.

7.    At no time did Singletary inform me that he wanted to be moved to another area of the facility because he felt threatened by anyone.

_____
William Gosnell

SWORN TO AND SUBSCRIBED before me this 6th day of August 2007.

_____
Notary

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 19, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BENNE SINGLETARY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-315-JJF |
| | ) | |
| COL. WILLIAM GOSNELL and | ) | |
| C/O MICHAEL WAPLES | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Upon Defendants' Opposition To Plaintiff's Motion For Summary Judgment; and it appearing that good and sufficient notice of the Opposition  has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** as follows:  Plaintiff's Motion for Summary Judgment is **DENIED**.

SO ORDERED this _____ day of _____, 2007.


_____
The Honorable Joseph J. Farnan
United States District Court Judge